TROUTMAN PEPPER HAMILTON SANDERS LLP
Kevin F. Kieffer, Bar No. 192193
kevin.kieffer@troutman.com
5 Park Plaza
Suite 1400
Irvine, CA  92614-2545
Telephone:    949.622.2700
Facsimile:    949.622.2739

TROUTMAN PEPPER HAMILTON SANDERS LLP
Brandon D. Almond (*pro hac vice* to be filed)
brandon.almond@troutman.com
401 9th Street, N.W.
Suite 1000
Washington, D.C.  20004-2134
Telephone:    202.274.2950
Facsimile:    202.274.2994

*Attorneys for Starr Indemnity and Liability Company*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, ARCH INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, AND GREAT AMERICAN INSURANCE COMPANY<br><br>Plaintiffs<br><br>v.<br><br>VIVO CAPITAL, LLC, VIVO VENTURES VII, LLC, VIVO CAPITAL VIII, LLC, VIVO CAPITAL IX, LLC, VIVO CAPITAL IX (CAYMAN), LLC, FRANK KUNG, EDGAR ENGLEMAN, SHAN FU, HONGBO LU, JACK NIELSEN, MICHAEL CHANG, MAHENDRA SHAH, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 5:24-cv-00916<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Starr Indemnity and Liability Company ("Starr"), Arch Insurance Company ("Arch"), Twin City Fire Insurance Company ("Twin City"), and Great American Insurance Company ("Great American") (collectively, "Plaintiffs" or "Excess Insurers"), by and through their undersigned counsel, hereby submit this Complaint against Defendants Vivo Capital, LLC, Vivo Ventures VII, LLC, Vivo Capital VIII, LLC, Vivo Capital IX, LLC, Vivo Capital IX (Cayman), LLC, Frank Kung, Edgar Engleman, Shan Fu, Hongbo Lu, Jack Nielsen, Michael Chang, Mahendra Shah, and DOES 1 through 25 (collectively, "Defendants" or "Vivo Parties"), and allege as follows:

### INTRODUCTION

1.    This action seeks a declaratory judgment that no indemnity coverage is afforded under the insurance policies issued by the Excess Insurers (the "Policies," defined and discussed below) to Vivo Capital, LLC ("Vivo Capital"), for judgments and settlements paid by or on behalf of the Vivo Parties in connection with underlying arbitrations and lawsuits brought by Dr. Albert Cha against the Vivo Parties (the "Cha Matters," defined and discussed further below), because those payments do not constitute an insurable "Loss" covered under the Policies or applicable California law.

### PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff Starr is a Texas corporation with its principal place of business in New York.

3.    Plaintiff Arch is a Missouri corporation with its principal place of business in New Jersey.

4.    Plaintiff Twin City is an Indiana corporation with its principal place of business in Connecticut.

5.    Plaintiff Great American is an Ohio corporation with its principal place of business in Ohio.

6.    Defendant Vivo Capital is a California limited liability company with its principal place of business in California. Per Vivo Capital's filings with the California Secretary of State, Vivo Capital's sole member, Cinthia Sheu, is a natural person who, upon information and belief,

COMPLAINT

resides in California.

7.      Defendant Vivo Ventures VII, LLC ("Fund VII G.P.") is a Delaware limited liability company with a principal place of business in California. Upon information and belief, Fund VII G.P.'s members are citizens of California and Delaware.

8.      Defendant Vivo Capital VIII, LLC ("Fund VIII G.P.") is a Delaware limited liability company with a principal place of business in California. Upon information and belief, Fund VIII G.P.'s members are citizens of California and Delaware.

9.      Defendant Vivo Capital IX, LLC is a Delaware limited liability company with a principal place of business in California. Upon information and belief, Vivo Capital IX, LLC's members are citizens of California and Delaware.

10.     Defendant Vivo Capital IX (Cayman), LLC is a Cayman Islands limited liability company with a principal place of business in California. Upon information and belief, Vivo Capital IX (Cayman), LLC's members are citizens of the Cayman Islands and California. (Vivo Capital IX (Cayman), LLC and Vivo Capital IX, LLC hereinafter jointly "Fund IX G.P.").

11.     Defendant Frank Kung is a natural person who, upon information and belief, is a citizen of California.

12.     Defendant Edgar Engleman is a natural person who, upon information and belief, is a citizen of California.

13.     Defendant Shan Fu is a natural person who, upon information and belief, is a citizen of Beijing, People's Republic of China.

14.     Defendant Hongbo Lu is a natural person who, upon information and belief, is a citizen of California.

15.     Defendant Jack Nielsen is a natural person who, upon information and belief, is a citizen of California.

16.     Defendant Michael Chang is a natural person who, upon information and belief, is a citizen of California.

17.     Defendant Mahendra Shah is a natural person who, upon information and belief, is a citizen of California.

COMPLAINT

1    18.    Defendants DOES 1 through 25 are individuals or entities that made payments in

2 connection with the judgment and/or settlement of the underlying Cha Matters. Plaintiffs do not

3 know the true names and capacities of defendants sued herein as DOES 1-25, and therefore sue

4 these defendants by such fictious names. Plaintiffs will amend the Complaint to identify the true

5 names and capacities of DOES 1 through 25 when ascertained.

6                              **JURISDICTION AND VENUE**

7    19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the

8 amount in controversy exceeds $75,000 exclusive of interest and costs, and there is complete

9 diversity of citizenship between the Plaintiffs and Defendants.

10    20.    Venue is proper in this district pursuant to 28 U.S.C. §1391(2) because a substantial

11 part of the events giving rise to the claim occurred in this district.

12                              **DIVISIONAL ASSIGNMENT**

13    21.    Pursuant to N.D. Cal. Local Rules 3-5(b) and 3-2(c), the Excess Insurers believe

14 that the convenience of parties and witnesses and the interests of justice will be served by assigning

15 this action to the San Jose Division of this Court.

16                              **FACTUAL ALLEGATIONS**

17 **A.    The Policies**

18          **1.    *The Primary Policy***

19    22.    Non-party Columbia Casualty Company issued claims-made and reported Private

20 Equity Liability Solutions Policy No. 652290339 to Vivo Capital for the November 30, 2020 to

21 November 30, 2021 **Policy Period**[1] (the "Primary Policy"). A true and correct copy of the Primary

22 Policy is attached hereto as Exhibit A.

23    23.    The Primary Policy's Limit of Liability and each **Claim** retention have been

24 exhausted through payment of **Defense Costs** incurred in connection with the Cha Matters.

25          **2.    *The Excess Policies***

26    24.    The Excess Insurers issued certain excess insurance policies to Vivo Capital that

27

28 _____
[1] Except for headings and where otherwise noted, terms in bold are defined terms in the Primary Policy.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

follow form in all pertinent respects to the terms, conditions, and exclusions of the Primary Policy (the "Excess Policies," together with the Primary Policy, the "Policies").

25.     The Excess Policies include:

- Starr Secure Excess Liability Policy No. 1000621048201, which Starr issued to Vivo Capital for the November 30, 2020 to December 30, 2021 Policy Period (attached hereto as Exhibit B).

- Arch Essential Excess Policy No. AAX1000072-00, which Arch issued to Vivo Capital for the November 30, 2020 to December 30, 2021 Policy Period (attached hereto as Exhibit C).

- The Hartford Premier Policy No. 57 DB 0341595-20, which Twin City issued to Vivo Capital for the November 30, 2020 to December 30, 2021 Policy Period (attached hereto as Exhibit D).

- Great American Excess Follow Form Insurance Policy No. PEXE247077, which Great American issued to Vivo Capital for the November 30, 2020 to December 30, 2021 Policy Period (attached hereto as Exhibit E).

### 3.     *Relevant Policy Provisions – Insured Entity Liability*

26.     The "Insured Entity Liability" Insuring Agreement of the Primary Policy to which the Excess Policies follow form states: "The Insurer will pay **Loss** on behalf of an **Insured Entity** resulting from any **Claim** first made against such **Insured Entity** during the **Policy Period**." Ex. A, Primary Policy, Section I.C.

27.     **Insured Entity** is defined to include, in relevant part, the **Named Insured** – Vivo Capital – as well as any entity **General Partner**; any entity managing member or entity management company identified in an **Organizational Document**; any **Investment Holding Company**; and any **Investment Manager**. *Id.*, Section II., Definitions.

28.     **Claim** is defined to include, in relevant part, "a written request for arbitration, mediation, or other alternative dispute resolution" and "a civil … proceeding commenced by … the return of service of a complaint … upon an **Insured** …, against an **Insured** for a **Wrongful Act**, including any appeal therefrom." *Id.*, Section II., Definitions.

29.     **Wrongful Act** is defined to mean:

Any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by:

1.  any **Insured Person** in: (a) his/her capacity as such; or (b) any matter claimed against such **Insured Person** solely by reason of his/her status as such;

2.  an **Insured Entity**, except while rendering, or failure to render, **Investment Activities**; or

3.  any **Insured Entity**, or by an natural person for whom an **Insured Entity** is legally liable, in the rendering of, or failure to render, **Investment Activities**.

*Id.*, Section II., Definitions.

30.     The Primary Policy to which the Excess Policies follow form further provides that, "[w]ith respect to any **Claims** involving the same **Wrongful Act** or **Interrelated Wrongful Acts**, such **Claims** will be deemed one **Claim** which was first made on . . . the date on which the earliest such **Claim** was first made[.]" *Id.*, Section VII.4. **Interrelated Wrongful Acts** is defined to mean "any **Wrongful Acts** that are causally connected by reason of any common fact, circumstance, situation, transaction, or event, or series of common facts, circumstances, situations, transactions, or events." *Id.*, Section II., Definitions.[2]

31.     **Loss** means "those amounts that an **Insured** is legally obligated to pay as a result of any **Claim**, including awards, settlements, judgments, pre-judgment and post-judgment interest, and claimant's attorney fees and costs attributable to the covered portion of a settlement or imposed as a result of a covered judgment." *Id.*, Section II, Definitions. However, **Loss**, other than **Defense Costs**, does not include, among other things:

(c)     amounts which are deemed uninsurable under the law pursuant to which this Policy is construed; . . .

(e)     payment of any dividends or other similar profit distributions of an **Insured Entity** to any shareholder, stakeholder, or equity holder of an **Insured Entity**; …

(h)     amounts, awards, settlements, or judgments that represent or are substantially equivalent to the price or consideration differential in connection with a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of

---

[2] The Cha Matters (as defined and discussed herein) constitute a single **Claim** pursuant to Section VII.4. of the Primary Policy.

COMPLAINT

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

any of the ownership interest in or assets of an entity is inadequate; [or]

(i) any amount that represents the return of any contribution of capital to any **Insured Person** or any **Fund**[.]

*Id.*

32. The Primary Policy to which the Excess Policies follow form also states that "[t]he Insurer will not be liable for **Loss** under this Policy in connection with any **Claim** … for:

(a) an **Insured's** actual or alleged liability under any contract or agreement, including express warranties or guarantees; or

(b) the actual or alleged liability of others an **Insured** assumes under any contract or agreement,

provided that this exclusion does not apply to:

i. an **Insured's** liability that exists in the absence of such contract or agreement;

ii. any **Claim** arising out of the rendering of, or failure to render, **Investment Activities**; or

iii. any **Claim** based upon, arising out of, or relating to any actual or alleged breach of any **Organizational Document**.

*Id.*, Section III.1. ("Contractual Liability Exclusion").

33. The Primary Policy to which the Excess Policies follow form further provides that "[t]he Insurer will not be liable for **Loss** under this Policy in connection with any **Claim** … based upon or arising out of:

(a) an **Insured** gaining any personal profit, remuneration, or financial advantage to which such **Insured** was not legally entitled …; or

(b) the committing of any deliberate criminal, or deliberate fraudulent act or omission, or any willful violation of law or regulation by an **Insured**,

established by a final non-appealable adjudication in the underlying action or proceeding other than a coverage action to determine the rights and responsibilities of any party to this Policy.

*Id.*, Section III.5., as amended by Amend Illegal Profits/Deliberate Acts Exclusion Endorsement ("Personal Profit/Deliberate Acts Exclusion").

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

34.    The Primary Policy to which the Excess Policies follow form further provides that "The **Insureds** will not agree to any settlement … without the Insurer's prior written consent, such consent not to be unreasonably withheld." *Id.*, Section V.2. ("Consent Requirement").

### *4.    Relevant Policy Provisions – Employment Practices Liability*

35.    The Primary Policy to which the Excess Policies follow form also contains an Insuring Agreement for "Employment Practices Liability," which states: "The Insurer will pay **Loss** on behalf of the **Insureds** resulting from any **Employment Claim** first made against such **Insureds** during the **Policy Period**." *Id.*, Section I., as amended by Employment Practices Liability Insuring Agreement Endorsement ("EPL Endorsement"), Section II.

36.    The EPL Endorsement defines "**Employment Claim**" to include, among other things, "1. a written demand (excluding a subpoena) for monetary, non-monetary, injunctive, or declaratory relief; 2. a written request for arbitration, mediation, or other alternative dispute resolution; … [or] 4. a civil, administrative, or regulatory proceeding (including an **EEOC Proceeding**), against an **Insured** by an **Employee** or **Executive** for an **Employment Practices Wrongful Act** or by a third party for a **Third Party Employment Practices Wrongful Act**, including any appeal therefrom." *Id.*, EPL Endorsement, Section III.D.

37.    The EPL Endorsement defines "**Employment Practices Wrongful Act**" to mean "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by the **Insured Persons** in their capacity as such or by the **Insured Entity** constituting or related to:

1.  wrongful dismissal or discharge or termination of employment, whether actual or constructive;
2.  employment-related misrepresentation;
3.  violation of any federal, state, local, or foreign laws (whether common-law or statutory) concerning employment or discrimination in employment, including the Americans with Disabilities Act of 1992, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, or the Civil Rights Act of 1866;
4.  employment-related sexual harassment or other unlawful harassment;
5.  wrongful deprivation of career opportunity, failure to grant tenure, demotion, failure to advance to status of partner or equity partner, or failure to employ or promote;

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

6.  wrongful discipline in employment;

7.  employment-related retaliation;

8.  negligent evaluation of employees;

9.  failure to adopt adequate workplace or employment policies or procedures;

10. employment-related defamation, humiliation, or invasion of privacy;

11. negligent hiring, retention, training, or supervision, failure to provide or enforce adequate or consistent corporate policies or procedures, or violation of an individual's civil rights in connection with any of the **Employment Practices Wrongful Acts** described in paragraphs 1. through 10. above;

12. employment-related false imprisonment, false arrest, detention, or malicious prosecution; or

13. employment-related wrongful infliction of emotional distress.

*Id.*, EPL Endorsement, Section III.D.

38.     The EPL Endorsement defines **Third Party Employment Practices Wrongful Act** to mean "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by the **Insured Persons** in his/her capacity as such or by the **Insured Entity** constituting or relating to: 1. sexual harassment or other unlawful harassment, or violation of any federal, state, or local harassment laws (whether common law or statutory); or 2. discrimination, or violation of any federal, state, local, or foreign discrimination laws (whether common law or statutory)." *Id.*

39.     The EPL Endorsement defines "**Loss**" for purposes of the Employment Practices Liability Insuring Agreement to mean "1. those amounts that an **Insured** is legally obligated to pay as a result of any **Employment Claim**, including awards, settlements, damages (including back pay and front pay), judgments, pre-judgment and post-judgment interest, and claimant's attorney fees and costs attributable to the covered portion of a settlement or imposed as a result of a covered judgment; 2. **Defense Costs**; 3. punitive, exemplary, and multiplied damages if such punitive or exemplary damages are insurable in the jurisdiction which is most favorable to an **Insured**, provided that such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Insurer, or to the **Employment Claim** giving rise to such damages; and 4. liquidated damages awarded pursuant to the Age Discrimination in Employment Act, the Family Medical Leave Act, or the Equal Pay Act." *Id.*, EPL Endorsement, Section III.A.

40.     However, for purposes of the Employment Practices Liability Insuring Agreement,

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

"**Loss**" does not include, among other things, "(b) compensation earned by the claimant in the course of employment but unpaid by the **Insured**, including salary, wages, commissions, severance, bonus, or incentive compensation; (c) any amounts, other than **Defense Costs**, for which an **Insured** is liable due to an act or omission in violation of any written contract of employment; … [or] (g) **Employment Related Benefits**." *Id.*

41.  **Employment Related Benefits** means "perquisites, fringe benefits, deferred compensation, or payments (including insurance premiums) in connection with an employee benefit plan, **Stock Benefits** and any other payment to or for the benefit of an **Employee** arising out of the employment relationship. **Employment Related Benefits** does not include salary, wages, commissions, or non-deferred cash incentive compensation." *Id.*, EPL Endorsement, Section III.D.

42.  **Stock Benefits** means "1. any offering, plan, or agreement between the **Named Insured** and any **Employee** which grants stock, stock warrants, or stock options of the **Named Insured** to any such **Employee**, including grants of stock options, restricted stock, stock warrants, performance stock shares, or any other compensation or incentive granted in the form of securities of the **Named Insured**; or 2. any payment or instrument in the amount or value of which is derived from the value of securities of the **Named Insured**, including stock appreciation rights or phantom stock plans or arrangements. **Stock Benefits** does not include employee stock ownership plans or employee stock purchase plans." *Id.*

43.  Finally, the EPL Endorsement adds an exclusion to the Employment Practices Liability Insuring Agreement stating: "The Insurer will not be liable for **Loss**, other than **Defense Costs**, under this Policy in connection with any **Employment Claim**: … for an **Insured's** actual or alleged liability pursuant to any written employment contract or employment agreement, including any written agreement concerning severance payments." *Id.*, EPL Endorsement, Section IV.E. ("EPL Contractual Liability Exclusion").

**B.    Relationship Between Dr. Albert Cha and the Vivo Parties**

44.  Vivo Capital is a capital investment management company that created certain private equity funds focused on healthcare industry investments, including, Vivo Ventures Fund VII, L.P. and Vivo Ventures Fund Cayman VII, L.P. ("Fund VII"); Vivo Capital Fund VIII, L.P.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

and Vivo Capital Surplus Fund VIII, L.P. ("Fund VIII"); and Vivo Capital Fund IX, L.P. ("Fund IX," and collectively with Fund VII and Fund VIII, the "Funds").

45.     The Funds are managed by general partner limited liability companies created and co-owned by the managing partners of Vivo Capital. The general partner limited liability companies include Defendants Fund VII G.P., Fund VIII G.P., and Fund IX G.P. (collectively, the "G.P. Firms").

46.     The G.P. Firms receive a certain percentage of "carried interest" in the Funds, then distribute that carried interest to Vivo Capital and its members.

47.     Dr. Cha was formerly a Managing Partner and partial owner of Vivo Capital, who also owned carried interests in the G.P. Firms that entitled him to a percentage of the increase in the value of the Funds' investments.

**C.     The Cha Matters**

48.     The Cha Matters (defined and discussed further below) all stem from the same core allegations by Dr. Cha: In July 2020, following a series of disagreements related to firm vision and processes between Dr. Cha and one of his Vivo Capital co-owners, that co-owner and two others conspired to use their majority power to oust Dr. Cha and pay him far less than fair market value for his ownership stake in Vivo Capital and to terminate his future rights to carried interest. They allegedly did this by voting in an email exchange to amend the original Vivo Capital operating agreement ("2005 Operating Agreement") to add provisions requiring (i) that any member whose employment with Vivo Capital is terminated – with or without cause – automatically has his or her ownership share reduced to 0%, and (ii) stating that expelled members who are terminated without cause are also required to sell back their ownership stake for just 25% of the value of the member's capital account – a small fraction of the true value of an ownership share in the company. Dr. Cha alleged Vivo Capital terminated him in 2020, then, pursuant to the improper 2020 amendments to the operating agreement ("2020 Operating Agreement"), reduced Dr. Cha's member's interest and voting percentage in Vivo Capital to zero, and sent him a promissory note for what the company contended was 25% of the value of Dr. Cha's capital account.

COMPLAINT

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

The JAMS Arbitration and Award

49.     On January 26, 2021, Dr. Cha filed a Demand for Arbitration with JAMS against Vivo Capital, Fund VII G.P., and Fund VIII G.P. (the "JAMS Arbitration"). The parties to the JAMS Arbitration later stipulated to remove Fund VIII G.P. from the JAMS Arbitration, after which Dr. Cha asserted claims against Fund VIII G.P. in the parallel AAA Arbitration (defined and discussed further below).

50.     In the JAMS Arbitration, Dr. Cha alleged that, in connection with Vivo Capital's termination of Dr. Cha and efforts to reduce his ownership interests, Vivo Capital and Fund VII G.P. unlawfully tried to amend the 2005 Operating Agreement to reduce Dr. Cha's ownership interest (and increase their own), and that the 2020 Operating Agreement was invalid and unenforceable.

51.     Through the JAMS Arbitration, Dr. Cha sought "clarity regarding his economic rights," and stated he was bringing the arbitration "seeking a determination regarding … what his interest in Vivo Capital is, including whether his co-owners' purported attempt to terminate his roughly 21% ownership stake in the company is valid, and, if so, how much he must be paid for that interest"; and "what his interests relating to Fund VII [] are, and whether Vivo Capital or the managing members of the fund general partner entities may take any of it away in the future."

52.     JAMS issued an Interim Final Award on March 18, 2022 and Corrected Final Award on June 14, 2022 (the "Award," attached hereto as Exhibit F).[3]

53.     In the Award, JAMS concluded the 2005 Operating Agreement "governs the buyout of Dr. Cha's interest in Vivo," and found "no basis in that agreement nor in any industry custom and practice to apply any discount to the amount due" (as had been argued by Vivo Capital and its expert based on the purported 2020 Operating Agreement). *See* Award, Ex. F, at 12.

54.     JAMS awarded Dr. Cha $24.834 million, which represented Dr. Cha's interest in Vivo Capital, valued by multiplying the fair market value of Vivo Capital by Dr. Cha's 20.6186%

---

[3] On September 12, 2022, Vivo Capital and Fund VII G.P. filed a Petition to Confirm, Correct, or Vacate the Award in the San Francisco County, California Superior Court (the "Petition"), in an action styled *Vivo Capital LLC, et al. v. Albert Cha*, No. CPF-22-517866. The full Award was attached as Exhibit 8(c) to the Petition and is publicly available on the docket for that action. Plaintiffs accordingly request that this Court take judicial notice of the Award pursuant to Fed. R. Evid. 201.

COMPLAINT

ownership interest. *Id.* at 8, 12, 24.

55.    JAMS also awarded Dr. Cha fees, costs, and interest totaling $4,247,307.41, for a total Award of $29,081,306.41. *Id.* at 24.

56.    On September 12, 2022, Vivo Capital and Fund VII G.P. filed a petition to vacate or, in the alternative, correct the Award ("Petition to Vacate") in San Francisco County Superior Court.

57.    On October 25, 2022, the court denied the Petition to Vacate and confirmed the Award pursuant to Cal. Code Civ. P. §§ 1285.2 and 1286.

58.    Vivo Capital appealed the San Francisco Superior Court's foregoing ruling to the First District Court of Appeals ("Vivo Appeal"), but that appeal has been dismissed pursuant to the terms of the Settlement discussed below.

The AAA Arbitration

59.    On May 17, 2021, Dr. Cha filed a Demand for Arbitration against Fund VIII G.P. before the American Arbitration Association ("AAA Arbitration," together with the JAMS Arbitration, the "Arbitrations"). Dr. Cha amended his demand twice, with the operative demand being the Second Amended Demand dated July 26, 2022 ("AAA Demand").

60.    In the AAA Demand, Dr. Cha alleged that, as part of his termination and the unlawful amendment to the 2005 Operating Agreement, Vivo Capital purported to terminate much of Dr. Cha's vested carried interest in Fund VIII G.P. and to force Dr. Cha to sell back his ownership stake in Vivo Capital for far less than his stake was worth.

61.    Dr. Cha also alleged Fund VIII G.P. had knowingly and intentionally withheld certain amounts as Fund VIII distributions to Dr. Cha pending the outcome of the Arbitrations.

62.    The AAA Demand included claims for breach of contract, based on Fund VIII G.P. withholding certain fund distributions; violation of California Penal Code Section 496, based on knowingly and intentionally withholding the foregoing fund distributions; breach of the implied covenant of good faith and fair dealing, by forfeiting Dr. Cha's vested carried interest in Fund VIII for no reason or in bad faith; and declaratory judgment that Fund VIII G.P. may not terminate Dr. Cha's vested carried interests in Fund VIII..

COMPLAINT

The Fund IX Lawsuit

63.    On November 18, 2022, Dr. Cha filed suit in Santa Clara County, California Superior Court (Case No. 22CV407912) against Vivo Capital, Fund IX G.P., Frank Kung, Edgar Engleman, Shan Fu, Hongbo Lu, Jack Nielsen, Michael Chang, and Mahendra Shah (the "Fund IX Lawsuit").

64.    In the Fund IX Lawsuit, Dr. Cha alleged that, after his disagreement with other members over how to run Fund IX and other funds managed by Vivo Capital, certain members conspired with one another to oust Dr. Cha from Vivo Capital, amend company agreements behind Dr. Cha's back to disadvantage Dr. Cha economically and give themselves new management powers, and to push Dr. Cha out of his management roles at Vivo Capital and all its funds, including Fund IX, in violation of their fiduciary obligations and the implied covenant of good faith and fair dealing.

65.    Dr. Cha also alleged the defendants tried to reduce his ownership interest in Fund IX to only 1%, despite the fact the members of Fund IX G.P. never signed or agreed upon an operating agreement for Fund IX that would spell out the ownership percentage of Fund IX held by each member.

66.    Dr. Cha sought a declaration of how much of Fund IX's profits and distributions should be allocated to each managing partner.

67.    The Fund IX Lawsuit included causes of action for Violation of Profit and Distribution Rights (based on incorrect distributions and allocations in an amount to be proven at trial); Declaratory Relief, declaring any purported operating agreement for Fund IX is invalid and unenforceable and determining the proportion and distribution of fund profits; Accounting (examination of the books and records of Fund IX to determine proper profits and distributions); and Enforcement of Books and Records Rights.

The Settlement

68.    On or about July 28, 2023, following a mediation that took place in May 2023, Dr. Cha, the Vivo Parties, and certain other entities executed a settlement of the AAA Arbitration and Fund IX Lawsuit (as well as the Vivo Appeal) (the "Settlement").

COMPLAINT

69.     Neither Arch, Twin City, nor Great American consented to, or waived their right to consent to, the Vivo Parties entering into the Settlement.

70.     For ease of reference herein, except whether otherwise indicated, the Arbitrations, Award, Fund IX Lawsuit, and Settlement shall collectively be referred to as the "Cha Matters."

**D.    <u>Denial of Coverage</u>**

71.     The Vivo Parties have requested that the Excess Insurers reimburse payments made by the Vivo Parties or on their behalf to Dr. Cha in the Cha Matters. The Excess Insurers have denied indemnity coverage for the Cha Matters under their respective policies.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief – No Duty to Indemnify – No "Loss" Under the Policies)**

72.     Plaintiffs hereby re-allege and incorporate by reference each allegation in the preceding paragraphs of their Complaint as though fully set forth herein.

73.     Subject to its terms and conditions, the Primary Policy to which each of the Excess Policies follow form, only provides coverage for **Loss** as defined in the Primary Policy.

74.     Under the Primary Policy (quoted above), **Loss** does not include amounts such as those awarded to Dr. Cha in the Award or resolved as part of the Settlement, including but not limited to amounts deemed uninsurable under applicable California law, the payment of dividends or profit distributions owed to Dr. Cha, and the payment of Dr. Cha's ownership interests and capital contributions, among other things expressly excluded from the **Loss** definition.

75.     The Vivo Parties did not incur any kind of covered **Loss** within the meaning of that term; they simply paid market value to buy back Dr. Cha's securities interests. If the Excess Insurers were required to subsidize this purchase, it would represent a windfall to the Vivo Parties.

76.     The Excess Insurers have no duty to indemnify the Vivo Parties for the Award or Settlement under the Excess Policies because the Vivo Parties have not proven that any portion of the Award or Settlement paid, or agreed to be paid, by the Vivo Parties constitutes **Loss** as that term is defined in the Primary Policy to which the Excess Policies follow form.

77.     An actual and justiciable controversy exists between the Excess Insurers and the Vivo Parties regarding the Excess Insurers' obligations under the Excess Policies with respect to

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

the Award and Settlement.

78.     Therefore, by the virtue of the foregoing, the Excess Insurers are entitled to a declaration that there is no indemnity coverage under the Excess Policies for the Cha Matters because the Vivo Parties have not incurred any covered **Loss**.

### SECOND CAUSE OF ACTION

### (Declaratory Relief – No Duty to Indemnify – No "Loss" Under California Law and Public Policy)

79.     Plaintiffs hereby re-allege and incorporate by reference each allegation in the preceding paragraphs of their Complaint as though fully set forth herein.

80.     California law governs the interpretation and application of the Policies.

81.     The Award and Settlement do not constitute "loss" as a matter of California law and public policy, because they involve amounts owed pursuant to a contract and the return of money wrongfully acquired.

82.     An actual and justiciable controversy exists between the Excess Insurers and the Vivo Parties regarding the Excess Insurers' obligations under the Excess Policies with respect to the Award and Settlement.

83.     Therefore, by the virtue of the foregoing, the Excess Insurers are entitled to a declaration that there is no indemnity coverage under the Excess Policies for the Cha Matters because the Vivo Parties have not incurred any covered "loss" as a matter of California law and public policy.

### THIRD CAUSE OF ACTION

### (Declaratory Relief – No Duty to Indemnify – California Insurance Code §533)

84.     Plaintiffs hereby re-allege and incorporate by reference each allegation in the preceding paragraphs of their Complaint as though fully set forth herein.

85.     California Insurance Code § 533 ("Section 533") provides in pertinent part that "[a]n insurer is not liable for a loss caused by the wilful act of the insured."

86.     The Cha Matters alleged, among other things, that the Vivo Parties conspired to

reduce or terminate Dr. Cha's ownership interests and increase their own, knowingly and intentionally withheld fund distributions owed to Dr. Cha, and, in doing so, breached their fiduciary obligations, committed bad faith, and violated California Penal Code Section 496.

87.     The Excess Insurers therefore have no duty to indemnify the Vivo Parties for the Cha Matters under the Excess Policies pursuant to Section 533.

88.     An actual and justiciable controversy exists between the Excess Insurers and the Vivo Parties regarding the Excess Insurers' obligations under the Excess Policies with respect to the Cha Matters.

89.     Therefore, by the virtue of the foregoing, the Excess Insurers are entitled to a declaration that there is no coverage under the Excess Policies for the Cha Matters pursuant to Section 533.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief – No Duty to Indemnify – Contractual Liability Exclusion)**

90.     Plaintiffs hereby re-allege and incorporate by reference each allegation in the preceding paragraphs of their Complaint as though fully set forth herein.

91.     Subject to its terms and conditions, the Primary Policy to which each of the Excess Policies follow form contains a Contractual Liability Exclusion, quoted above.

92.     The Cha Matters constituted a **Claim** for Vivo Capital's liability under any contract or agreement.

93.     The Excess Insurers have no duty to indemnify the Vivo Parties for the Award or Settlement under the Excess Policies pursuant to the Contractual Liability Exclusion.

94.     An actual and justiciable controversy exists between the Excess Insurers and the Vivo Parties regarding the Excess Insurers' obligations under the Excess Policies with respect to the Award and Settlement.

95.     Therefore, by the virtue of the foregoing, the Excess Insurers are entitled to a declaration that there is no coverage under the Excess Policies for the Cha Matters pursuant to Contractual Liability Exclusion.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

COMPLAINT

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief – No Duty to Indemnify –
Personal Profit/Deliberate Acts Exclusion)**

96.     Plaintiffs hereby re-allege and incorporate by reference each allegation in the preceding paragraphs of their Complaint as though fully set forth herein.

97.     The Primary Policy to which each of the Excess Policies follow form contains a Personal Profit/Deliberate Acts Exclusion, precluding coverage for any **Claim**, as here, based upon or arising out of:

(a) an **Insured** gaining any personal profit, remuneration, or financial advantage to which such **Insured** was not legally entitled …; or

(b) the committing of any deliberate criminal, or deliberate fraudulent act or omission, or any willful violation of law or regulation by an **Insured**,

established by a final non-appealable adjudication in the underlying action or proceeding other than a coverage action to determine the rights and responsibilities of any party to this Policy.

98.     As established in the Award, the Cha Matters are based upon or arise out of the **Insureds** gaining a personal profit, remuneration, or financial advantage to which they were not legally entitled and/or the committing of any deliberate criminal, or deliberate fraudulent act or omission, or ay willful violation of law or regulation.

99.     The Excess Insurers have no duty to indemnify the Vivo Parties for the Cha Matters under the Excess Policies pursuant to the Personal Profit/Deliberate Acts Exclusion.

100.     An actual and justiciable controversy exists between the Excess Insurers and the Vivo Parties regarding the Excess Insurers' obligations under the Excess Policies with respect to the Cha Matters.

101.     Therefore, by the virtue of the foregoing, the Excess Insurers are entitled to a declaration that there is no coverage under the Excess Policies for the Cha Matters pursuant to the Personal Profit/Deliberate Acts Exclusion.

COMPLAINT

**SIXTH CAUSE OF ACTION**

**(Declaratory Relief – No Duty to Indemnify as to Plaintiffs Arch, Twin City, and Great American – Breach of Consent Requirement)**

102.    Plaintiffs hereby re-allege and incorporate by reference each allegation in the preceding paragraphs of their Complaint as though fully set forth herein.

103.    Subject to its terms and conditions, the Primary Policy to which each of the Excess Policies follow form contains a Consent Requirement, which provides that the **Insured** will not agree to any settlement without the Insurer's prior written consent.

104.    The Vivo Parties agreed to the Settlement with Dr. Cha without the prior written consent of Arch, Twin City, or Great American, and without Arch, Twin City, or Great American agreeing to waive their right to consent.

105.    Therefore, by the virtue of the foregoing breach of the Consent Requirement, Arch, Twin City, and Great American are entitled to a declaration that there is no coverage under their respective excess policies for the Settlement.

**SEVENTH CAUSE OF ACTION**

**(Declaratory Relief – No Duty to Indemnify – EPL Endorsement)**

106.    Plaintiffs hereby re-allege and incorporate by reference each allegation in the preceding paragraphs of their Complaint as though fully set forth herein.

107.    The Vivo Parties have suggested they also have coverage for the Cha Matters under the EPL Endorsement.

108.    However, the Cha Matters do not constitute or assert a a **Claim** against any Vivo Party for any **Employment Practices Wrongful Act** or **Third Party Employment Practices Wrongful Act** as required to implicate the Employment Practices Liability Insuring Agreement.

109.    Furthermore, even if the Vivo Parties could show (contrary to a plain reading of the pleadings) that the Cha Matters were a **Claim** for any **Employment Practices Wrongful Act** or **Third Party Employment Practices Wrongful Act**, coverage would otherwise be precluded pursuant to the terms of the EPL Endorsement because the Cha Matters do not involve any "**Loss**"

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

COMPLAINT

as that term is defined in the EPL Endorsement, and also implicate the EPL Contractual Liability Exclusion.

110.    The Excess Insurers therefore have no duty to indemnify the Vivo Parties for the Cha Matters under the EPL Endorsement.

111.    An actual and justiciable controversy exists between the Excess Insurers and the Vivo Parties regarding the Excess Insurers' obligations under the EPL Endorsement with respect to the Cha Matters.

112.    Therefore, by the virtue of the foregoing, the Excess Insurers are entitled to a declaration that there is no coverage under the Excess Policies for the Cha Matters pursuant to the EPL Endorsement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court:

(1) Enter declaratory judgment on Count I in favor of the Excess Insurers and against the Vivo Parties that there is no indemnity coverage available under the Policies for the Cha Matters because the Cha Matters do not involve "**Loss**" as that term is defined in the controlling Primary Policy to which the Excess Policies follow form;

(2) Enter declaratory judgment on Count II in favor of the Excess Insurers and against the Vivo Parties that there is no indemnity coverage available under the Policies for the Cha Matters as a matter of California law and public policy;

(3) Enter declaratory judgment on Count III in favor of the Excess Insurers and against the Vivo Parties that there is no indemnity coverage available under the Policies for the Cha Matters pursuant to California Insurance Code §533;

(4) Enter declaratory judgment on Count IV in favor of the Excess Insurers and against the Vivo Parties that there is no indemnity coverage available under the Policies for the Cha Matters pursuant to the terms of the Contractual Liability Exclusion in the controlling Primary Policy to which the Excess Policies follow form;

(5) Enter declaratory judgment on Count V in favor of the Excess Insurers and against the Vivo Parties that there is no indemnity coverage available under the Policies for the

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

COMPLAINT

Award pursuant to the terms of the Personal Profit/Deliberate Acts Exclusion in the controlling Primary Policy to which the Excess Policies follow form;

(6) Enter declaratory judgment on Count VI in favor of Arch, Twin City, and Great American and against the Vivo Parties that there is no indemnity coverage available under their respective policies for the Settlement;

(7) Enter declaratory judgment on Count VII in favor of the Excess Insurers and against the Vivo Parties that there is no indemnity coverage available under the Policies for the Cha Matters pursuant to the EPL Endorsement in the controlling Primary Policy to which the Excess Policies follow form;

(8) Award the Excess Insurers fees and costs incurred in this action; and

(9) Award the Excess Insurers such additional declaratory and other, further, and additional relief as this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), the Excess Insurers demand a trial by jury on all issues triable by jury.

Dated: February 15, 2024                      TROUTMAN PEPPER HAMILTON
SANDERS LLP


By: */s/ Kevin F. Kieffer*
    Kevin F. Kieffer
    Brandon Almond (*pro hac vice* to be
    filed)
    Attorneys for Plaintiff
    *STARR INDEMNITY AND LIABILITY*
    *COMPANY*


Additional counsel on next page

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

WALKER WILCOX MATOUSEK LLP
Tiffany S. Saltzman-Jones, Bar No. 337105
tsj@walkerwilcox.com
One North Franklin Street, Suite 3200
Chicago, IL 60606
Telephone: 312.244.6709

*Counsel for Arch Insurance Company*

WERNER AHARI MANGEL LLP
Roxana Sadeghi, Bar No. 294399
RSadeghi@wam.law
Gabriela (Gaby) Richeimer (*pro hac vice* to be filed)
GRicheimer@wam.law
2112 Pennsylvania Ave., NW, Suite 200
Washington, DC 20037
Telephone: 202.599.1092

*Counsel for Twin City Fire Insurance Company*

KAUFMAN BORGEEST & RYAN LLP
Nicole Sheth, Bar No. 253515
nsheth@kbrlaw.com
21700 Oxnard St., Suite 1450
Woodland Hills, CA 91367
Telephone: 818.880.0992

KAUFMAN BORGEEST & RYAN LLP
Scott A. Schechter (*pro hac vice* to be filed)
sschechter@kbrlaw.com
Matthew M. Collibee (*pro hac vice* to be filed)
mcollibee@kbrlaw.com
200 Summit Lake Dr., 1ˢᵗ Floor
Westchester, NY 10595
Telephone: 914.449.1055

*Counsel for Great American Insurance Company*

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 21 -

COMPLAINT